## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITY OF PHILADELPHIA, | |
| Plaintiff, | Case Number: 2:22-cv-04779-JS |
| vs. | |
| 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Co.); E. I. DUPONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DUPONT DE NEMOURS, INC.; CORTEVA, INC.; CHEMGUARD, INC.; TYCO FIRE PRODUCTS LP (successor-in-interest to The Ansul Company); KIDDE-FENWAL, INC.; KIDDE PLC, INC.; CHUBB FIRE, LTD.; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.; CARRIER GLOBAL CORPORATION; NATIONAL FOAM, INC.; BUCKEYE FIRE EQUIPMENT COMPANY; ARKEMA, INC.; BASF CORPORATION; CHEMDESIGN PRODUCTS, INC.; CLARIANT CORPORATION; AGC, INC. (f/k/a Asahi Glass Co., Ltd.); AGC CHEMICALS AMERICAS, INC.; DYNAX CORPORATION; ARCHROMA MANAGEMENT, LLC; ARCHROMA U.S., INC.; and JOHN DOE DEFENDANTS 1-50, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND** |
| Defendants. | |

# TABLE OF CONTENTS

I.      Introduction .................................................................................................. 1

II.     Background ................................................................................................... 2

        A.    Factual Background ............................................................................. 2

        B.    Procedural Background ....................................................................... 3

III.    Legal Standards ........................................................................................... 5

IV.     Argument ...................................................................................................... 5

        A.    Tyco does not show a colorable government-contractor defense. ........................... 6

              1.    Tyco does not allege a contract with the United States for MilSpec
                    AFFF. ................................................................................................ 6

              2.    Tyco did not discharge a government contractor's broad duty to warn
                    the United States about product risks. ........................................... 8

        B.    Tyco further fails to show that it "acted under" a federal superior. ........................ 10

        C.    Tyco does not show a connection between its federal-officer conduct and the
              City's suit. ......................................................................................... 13

        D.    Tyco's non-precedential decisions are either easily distinguishable or incorrectly
              decided. ............................................................................................. 13

V.      Conclusion ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayo v. 3M Co.*,
  No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) ..................... 13, 14

*Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*,
  883 F.2d 1210 (3d Cir. 1989)............................................................................................. 8

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988).............................................................................................. 5, 6, 7, 9

*Carley v. Wheeled Coach*,
  991 F.2d 1117 (3d Cir. 1993).......................................................................................... 6, 7

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022) .......................................................................................... 11, 12

*Dalton v. 3M Co.*,
  No. 10-00114, 2011 WL 5881179 (E.D. Pa. Aug. 2, 2011) ..................................................... 8

*Goepel v. Nat'l Postal Mail Handlers Union*,
  36 F.3d 306 (3d Cir. 1994)................................................................................................ 6

*Graves v. 3M Co.*,
  17 F.4th 764 (8th Cir. 2021) ............................................................................................ 8

*Haas v. 3M Co.*,
  613 F. App'x 191 (3d Cir. 2015) ...................................................................................... 6

*Hagen v. Benjamin Foster Co.*,
  739 F. Supp. 2d 770 (E.D. Pa. 2010) ................................................................................ 6

*Harris v. Kellogg Brown & Root Servs., Inc.*,
  724 F.3d 458 (3d Cir. 2013)............................................................................................. 6

*Hercules, Inc. v. United States*,
  516 U.S. 417 (1996)...................................................................................................... 5, 8

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
  474 F. Supp. 3d 1231 (N.D. Fla. 2020).............................................................................. 6

*In re Commonwealth's Motion*,
  790 F.3d 457 (3d Cir. 2015)....................................................................................... 1, 5, 7, 13

*In re Joint E. & S. Dist. N.Y. Asbestos Litig.*,
  897 F.2d 626 (2d Cir. 1990) ................................................................................. 8

*Isaacson v. Dow Chemical Co.*,
  517 F.3d 129 (2d Cir. 2008) ................................................................................ 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ............................................................................................. 5

*Lazorko v. Penn. Hosp.*,
  237 F.3d 242 (3d Cir. 2000) ............................................................................... 13

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .............................................................................. 8

*Lu Junhong v. Boeing Co.*,
  792 F.3d 805 (7th Cir. 2015) ......................................................................... 11, 12

*Maglioli v. Alliance HC Holdings, LLC*,
  16 F.4th 393 (3d Cir. 2021) ........................................................................... 11, 12

*Nessel v. Chemguard, Inc.*,
  No. 1:20-cv-1080, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ..................... 13, 14

*Papp v. Fore-Kast Sales Co.*,
  842 F.3d 805 (3d Cir. 2016) ........................................................................ passim

*Ruppel v. CBS Corp.*,
  701 F.3d 1176 (7th Cir. 2012) .............................................................................. 8

*Skyline Air Serv., Inc. v. G.L. Capps Co.*,
  916 F.2d 977 (5th Cir. 1990) ................................................................................ 8

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................................... 5

*Trevino v. General Dynamics Corp.*,
  865 F.2d 1474 (5th Cir. 1989) ......................................................................... 9, 10

*Watson v. Phillip Morris Cos.*,
  551 U.S. 142 (2007) ........................................................................... 10, 11, 12, 14

*Wayne Land & Mineral Grp. v. De. River Basin Comm'n*,
  959 F.3d 569 (3d Cir. 2020) ................................................................................. 5

**Statutes**

28 U.S.C. § 1442(a)(1) .............................................................................. 1, 3, 5, 13

**Regulations**

14 C.F.R. § 139.1(a)................................................................................................................ 3

14 C.F.R. § 139.5 ................................................................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

The City of Philadelphia ("City") brought this action in Pennsylvania state court, bringing state-law tort claims against twenty-four companies ("Defendants") that contaminated the City's property and natural resources with per- and poly-fluoroalkyl substances ("PFAS"), pernicious pollutants commonly known as "forever" chemicals. *See* Compl., ECF No. 1-1 ¶¶ 1–9. Releases of PFAS have caused "citywide" contamination, *id.* ¶ 10, of the City's drinking water system and other public and City-owned property, *id.* ¶¶ 2, 7–15, 204–07. The Defendants are responsible for the myriad PFAS, PFAS-containing products, and products that degrade into PFAS ("PFAS Products") that were emitted in the City and surrounding areas. *See id.* ¶¶ 104–11.

Tyco Fire Products LP and Chemguard, Inc. (collectively, "Tyco"[1]) removed this action to this Court. Tyco is a major manufacturer and seller of aqueous film-forming foam ("AFFF"), PFAS-laden firefighting agents that contributed to the City's injuries. *Id.* ¶¶ 10, 15, 44, 48. Tyco argues this Court has subject-matter jurisdiction under the federal-officer removal statute. 28 U.S.C. § 1442(a)(1). Tyco theorizes that when it designed, made, sold, and failed to adequately warn about AFFF, it was a federal contractor "acting under" federal officers and is thus entitled to a government-contractor defense. *See* Notice of Removal ("NOR"), ECF No. 1 ¶¶ 3, 13–34.

The Court should remand this action to state court because Tyco's jurisdictional theory is implausible. Tyco cannot assert a government-contractor defense because it has not put in the record any facts showing that it ever contracted with the United States to sell AFFF, much less AFFF used in or near Philadelphia. Even assuming Tyco was a federal contractor, it is not entitled to the defense because it does not show that it met a government contractor's duty to warn the United States about all the dangers of its AFFF known to it but not the United States. Instead of showing that it met this warning requirement, Tyco tries to water down the requirement by ignoring controlling precedents that unambiguously support a stringent duty to warn. Tyco also does not meet other necessary elements of federal-officer removal: that it was "acting under" a federal officer, and that there is a connection between its actions under a federal officer and the City's claims. *See In re Commonwealth's Motion*, 790 F.3d 457, 467 (3d Cir. 2015).

---

[1] In referring to Tyco Fire Products LP and Chemguard, Inc. as "Tyco," the City follows the convention used by Tyco in its Notice of Removal. *See* ECF No. 1 at 1. The City does not waive any potential arguments relating to whether the two entities are separate corporations.

The City respectfully requests the Court to grant this remand motion (the "Motion") and return this action to state court. In part because Tyco's jurisdictional theory is so clearly defective, the City has concurrently filed a separate motion seeking expedited consideration of the Motion (the "Motion to Expedite"), which arguments are incorporated herein.

## II.     Background

### A.     Factual Background

In its Notice of Removal, Tyco does not contest any of the allegations in the City's Complaint. Rather, Tyco pleads additional facts to support its jurisdictional theory. In turn, the City does not presently contest Tyco's additional facts for purposes of this motion. However, the City does disagree that any facts in the Complaint or otherwise have the jurisdictional implications that Tyco asserts. In this scenario, the Court should take the facts in the Complaint and the Notice of Removal as true, then construe them in the light most favorable to Tyco. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (undisputed facts interpreted in light most favorable to party seeking federal-officer removal); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009) ("In removal cases, we begin evaluating jurisdiction by reviewing the allegations in the complaint and in the notice of removal.").

PFAS are human-made chemical pollutants. Compl. ¶ 3. PFAS are toxic and carcinogenic at low levels, highly resistant to degradation, and mobile once released into the environment. *Id.* ¶¶ 4–5, 7. Because PFAS were used in many ways, they have been released through many pathways, have propagated in the environment, and have caused City-wide contamination that injures the City's property and natural resources, especially its drinking water supply. *Id.* ¶¶ 9, 14–17, 108–21, 200–10. The City brought exclusively state-law tort claims against twenty-four Defendants that designed, manufactured, marketed, promoted, sold, supplied, distributed, used, and/or disposed of the PFAS Products that caused the City's injuries. *Id.* ¶¶ 1, 6, 211–82. Each Defendant knew long ago about their PFAS Products' environmental and public health risks. *Id.* ¶¶ 7, 140–93. As sophisticated and well-resourced companies, Defendants had superior knowledge about their PFAS Products' risks compared to "any person or government entity." *Id.* ¶¶ 195 –97, 201. But Defendants failed to warn about these risks, and also failed to take measures to prevent or mitigate PFAS pollution. *Id.* ¶ 194. In fact, Defendants misleadingly promoted PFAS Products as safe and appropriate for widespread use. *Id.*

AFFF is a major source of PFAS contamination in the City, especially at and near airports

including the Philadelphia International Airport. *Id.* ¶ 14, 117–21, 203, 209. Tyco has long been a leading manufacturer of AFFF. *See id.* ¶¶ 42–49, 132–33. Tyco's Notice of Removal alleges that it and other AFFF manufacturers supplied PFAS-containing AFFF to the Philadelphia International Airport, a "Part 139" airport in the City. NOR ¶¶ 1, 3, 20, 26. Part 139 is the FAA's regulatory framework for larger commercial airports. 14 C.F.R. § 139.1(a). Under Part 139, airport "certificate holder[s]"—the airport operators that hold "Airport Operating Certificate[s] issued" by the FAA, *id.* § 139.5—must assure sufficient "firefighting capability" at airports, *id.* §§ 139.315–319 (regulations pertaining to firefighting equipment, agents, and operational requirements). Tyco also alleges that at certain times relevant to the City's claims, the FAA required Part 139 airport operators to use AFFF that complied with certain military specifications known as the "MilSpec." *See* NOR ¶ 20. The MilSpec was originally developed by the Navy during its procurement activities to determine suitable firefighting agents for aviation and non-aviation fires. *Id.* ¶¶ 17–20. And "until very recently," MilSpec AFFF was required to contain PFAS. *Id.* ¶ 19.

In sum, Tyco argues that when the FAA set requirements for AFFF firefighting agents at Part 139 commercial airports, the agency adopted a MilSpec that the Navy had developed for military procurement. *Id.* ¶¶ 17–20. In turn, the MilSpec required AFFF to contain PFAS. *Id.* ¶ 19. So, the FAA effectively required Part 139 airport operators to use AFFF that contained PFAS pursuant to the MilSpec. Tyco's removal theory is that by selling AFFF to Part 139 airport operators, it was "acting under" the United States, its officers, or its agencies. *See generally id.* Neither the City's Complaint nor Tyco's Notice of Removal alleges that:

- Tyco ever contracted with the United States;
- Tyco ever sold AFFF to the United States;
- Tyco otherwise had a commercial or procurement relationship with the United States; or
- Tyco was ever subject to Part 139, which imposes binding federal requirements on airport "certificate holder[s]," 14 C.F.R. § 139.5, and not on companies like Tyco that merely supply firefighting agents to airport operators.

### B. Procedural Background

The City sued the Defendants in state court, bringing exclusively state-law tort claims. *See generally* Compl. Tyco timely removed this action. *See* ECF No. 1. None of the other Defendants have endorsed Tyco's theories of federal subject-matter jurisdiction.

3

Tyco removes under the federal-officer removal statute. 28 U.S.C. § 1442(a)(1). Tyco asserts that whenever it sold MilSpec AFFF—particularly to the Philadelphia International Airport—it was "acting under" a federal officer. NOR ¶¶ 3, 20, 26, 27. Tyco contends that because the City is injured by AFFF-related pollution at the Philadelphia International Airport, the City's claims are connected with Tyco's purported conduct "under" a federal officer. *Id.* ¶¶ 25–27. Even though Tyco does not identify (much less describe) a single contract with the United States, Tyco contends it has a colorable government-contractor defense. *Id.* ¶¶ 28–35.

Just after Tyco removed this action to this Court, it notified the Clerk of the Judicial Panel on Multidistrict Litigation (the "Panel," or "JPML") that the City's suit might be eligible for transfer to the *In re Aqueous Film-Forming Foams Products Liability Litigation* multidistrict litigation ("*AFFF MDL*," supervised by the "MDL Court").[2] *See AFFF MDL*, Notice of Potential Tag-Along (JPML ECF No. 1636);[3] JPML r.7.1(a) (requirement to notify the Panel's Clerk about "potential tag-along actions"). The *AFFF MDL* consists of thousands of actions relating to PFAS contamination arising out of the use of AFFF. The Panel's Clerk then entered a conditional transfer order ("CTO") that, if finalized, would transfer this action to the *AFFF MDL. See AFFF MDL*, Notice of Filing of CTO and Publication of Briefing Schedule (CTO-112) (JPML ECF No. 1640); *see also* JPML r.7.1(b). On December 15, 2022, the City filed a notice of opposition to the Clerk's CTO. *See AFFF MDL*, Notice of Opposition to CTO-112 (JPML ECF No. 1650); *see also* JPML r. 7.1(c). The JPML ordered the City to file a motion to vacate the CTO on or before January 3, 2022. *See AFFF MDL*, Notice of Filed Opposition to CTO-112 and Publication of Briefing Schedule (JPML ECF No. 1651); *see also* JPML r. 7.1(f).

Until the JPML rules on the City's motion to vacate the CTO, this Court is and will be the only court empowered to make jurisdictional determinations and properly remand this action.

---

[2] *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873 (D.S.C.).

[3] The *AFFF MDL* has two dockets, both accessible via CM/ECF. One docket consists of proceedings before the JPML, which mostly concern whether actions should be transferred to the MDL. The case number for the JPML docket is "No. 2873." The other docket consists of post-transfer proceedings before the District of South Carolina, the MDL Court. The case number for the District of South Carolina docket is "No. 2:18-mn-02873-RMG."

When citing entries on the JPML docket, this Memorandum will use the convention, "*AFFF MDL*, [document title] (JPML ECF No. [number])." When citing entries on the District of South Carolina's docket, this Memorandum will use the convention "*AFFF MDL*, [document title] (D.S.C. ECF No. [number])."

## III.   Legal Standards

Federal courts have limited subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because jurisdictional limitations "spring[] from the nature and limits of the judicial power of the United States," they are "inflexible and without exception," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), and courts have a "continuing obligation to assure that [they] have jurisdiction." *Wayne Land & Mineral Grp. v. De. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quotations omitted).

Here, Tyco asserts there is subject-matter jurisdiction under the federal-officer removal statute. *See* 28 U.S.C. § 1442(a)(1). Under that statute, a removing defendant must show that (1) "it is a 'person' within the meaning of the statute," (2) "the [plaintiff's] claims are based on the [defendant's] conduct 'acting under' the United States, its agencies, or its officers," (3) "the [plaintiff's] claims against [the defendant] are 'for, or relating to' an act under color of federal office," and (4) "[the defendant] raises a colorable federal defense to the [plaintiff's] claims." *See In re Commonwealth's Motion*, 790 F.3d at 467. Tyco contends it satisfies the fourth element with a colorable government-contractor defense. Under that defense, "a federal contractor cannot be held liable for a state tort if, in the context of the work at issue, '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.'" *Papp*, 842 F.3d at 814 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). This duty to warn is broad: a government contractor must "warn[] the United States about *any* hazards known to the contractor but not to the Government." *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996) (emphasis added); *accord Papp*, 842 F.3d at 814 (government contractor had to warn about "*any* asbestos hazards" (emphasis added)).

## IV.   Argument

Tyco does not meet the elements of federal-officer removal. <u>First</u>, Tyco lacks a colorable government-contractor defense because it never asserts in its Notice of Removal that it had a contract with the United States. <u>Second</u>, Tyco's government-contractor defense also fails because the company does not show that it discharged a government contractor's broad duty to warn the United States. <u>Third</u>, Tyco did not "act under" a federal officer by supplying MilSpec AFFF to commercial airport operators that were subject to FAA requirements. <u>Fourth</u>, because Tyco never "acted under" a federal officer, Tyco cannot show that the City's claims are "for, or relating to,"

any act under color of office.

### A.    Tyco does not show a colorable government-contractor defense.

Tyco's burden is to show a "colorable" government-contractor defense. "Colorable" means Tyco's defense must be "legitimate and could reasonably be asserted, given the facts presented and the current law." *Papp*, 842 F.3d at 815 (quotations and brackets omitted). Tyco must "identif[y] facts which, viewed in the light most favorable to [it], would establish a complete defense at trial." *Id.* (quoting *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782–83 (E.D. Pa. 2010)). Tyco has failed to plead facts supporting a government-contractor defense.

### 1.    Tyco does not allege a contract with the United States for MilSpec AFFF.

As explained, Tyco does not allege that it ever contracted with the United States. Accordingly, Tyco cannot assert a colorable government-contractor defense.

The U.S. Supreme Court in *Boyle v. United Technologies Corp.*, which addressed a military contract, rooted the government-contractor defense in the "federal interest in federal-government contracts with private parties that is implicated in suits by private parties against a government contractor for conduct resulting from the government contract." *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 478–79 (3d Cir. 2013) (citing *Boyle*, 487 U.S. at 504–07).[4] Sensibly, the Third Circuit has allowed only federal contractors to assert the defense. *Goepel*, 36 F.3d at 314 ("The *Boyle* Court limited the scope of the displacement of state laws holding government contractors liable for design defects to the following circumstances . . . ."); *see Papp*, 842 F.3d at 814 ("Under *Boyle*, a federal contractor cannot be held liable for a state tort if . . . ."); *Haas v. 3M Co.*, 613 F. App'x 191, 196 n.10 (3d Cir. 2015) (unpublished) ("That defense insulates a private government contractor from a state-law products liability claim . . . ."). And for good reason: "the uniquely federal interests underlying the creation of a federal common law defense in the context of federal procurement contracts . . . simply do not exist in the absence of a government contract." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 474 F. Supp. 3d 1231, 1248 (N.D. Fla. 2020).

Tyco cannot justify applying the defense where there is no contract at issue. Pointedly, Tyco does not identify a single controlling decision recognizing that a government-contractor defense is viable without a contract with the United States, and the City has been unable to locate

---

[4] *See also*, *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 313–14 (3d Cir. 1994) (similar); *Carley v. Wheeled Coach*, 991 F.2d 1117, 1120 (3d Cir. 1993) (similar).

one. To the contrary, decisions like *Carley v. Wheeled Coach*, 991 F.2d 1117 (3d Cir. 1993), weigh against extending *Boyle* to entities without a government contract. In *Carley*, the Third Circuit extended *Boyle*'s government-contractor defense beyond military contractors to non-military federal contractors. *Id.* at 1119–25. In doing so, the Third Circuit explained the basis for the government-contractor defense. *Id.* By "exten[ding] . . . sovereign immunity" to federal contractors, *id.* at 1123, the defense prevents "state authorities [from] 'second-guessing'" certain kinds of discretionary federal contracting decisions, *id.* at 1122, and thus resolves "a 'significant conflict' between federal interests and state law in the procurement context which would justify displacement of state law," *id.* at 1121. These justifications are inapplicable where, as here, the removing defendant fails to identify a federal contract.

The *Carley* court also found it to be a close case whether to extend *Boyle*'s government-contractor defense to non-military federal contractors. The court identified "a significant split in authority" on the question, *id.* at 1119, and labored to justify this extension, *id.* at 1119–25; *cf. id.* at 1128–33 (*Becker*, J., dissenting). Tyco's far more radical expansion of *Boyle*'s government-contractor defense—which would make the government-contractor defense available even absent *any* contract between a defendant and the United States—would "extend *Boyle* . . . far beyond its logical limits." *Id.* at 1128 (*Becker*, J., dissenting).

In opposition, Tyco may creatively interpret its Notice of Removal to assert that there was a contractual relationship between it and the United States. But Tyco's failure to identify in its Notice a contract with the United States cannot be an oversight. Tyco, a frequent defendant in PFAS suits, is familiar with the elements of a government-contractor defense. If Tyco contends there is a relevant contract with the United States, it should identify that contract. Such identification is necessary for the Court to evaluate whether Tyco's government-contractor defense is colorable. *See In re Commonwealth's Motion*, 790 F.3d at 466 ("This notice must allege the underlying facts supporting each of the requirements for removal jurisdiction." (quotations omitted)).

Finally, even if Tyco shows that it entered a federal contract *sometime* and *somewhere*, its defense would nonetheless be deficient because any contract must relate to the City's claims relating to PFAS pollution in Philadelphia. The government-contractor defense is limited to "the context of the work at issue" in the contract. *Papp*, 842 F.3d at 814; *see Boyle*, 487 U.S. at 506 (defense applies to "the civil liabilities *arising out of the performance of* federal procurement

contracts" (emphasis added)). Here, the "work at issue"—according to Tyco's Notice of Removal—is Tyco's AFFF sales to a Part 139 airport (the Philadelphia International Airport or somewhere else relevant to the City's claims[5]). Tyco has not identified any contract relevant to the City's claims.

### 2. Tyco did not discharge a government contractor's broad duty to warn the United States about product risks.

To avail itself of the government-contractor defense, Tyco must also show that it "warned the United States about *any* hazards known to the contractor but not to the Government." *Hercules, Inc.*, 516 U.S. at 422 (emphasis added); *see Papp*, 842 F.3d at 814 (3d Cir.) ("*any* asbestos hazards").[6] As a corollary, Tyco may satisfy this element by showing that the United States "knew as much [as] or more than [Tyco] about the hazards" of Tyco's AFFF at all relevant times. *See Dalton v. 3M Co.*, No. 10-00114, 2011 WL 5881179, at *1 n.1 (E.D. Pa. Aug. 2, 2011) (quoting *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1216 (3d Cir. 1989)).

Tyco does not allege it ever warned the United States about any of the dangers of its AFFF. So, Tyco must show that the United States knew as much as or more than it about the dangers of its AFFF. Tyco cannot make that showing because the Complaint's uncontroverted allegations—which the Court must accept as true—show that "[a]t all times relevant to this action, Defendants [including Tyco] had superior knowledge of the dangers of PFAS to all other persons and concealed and/or failed to sufficiently disclose those dangers." Compl. ¶ 201; *see id.* ¶¶ 196–98 (similar). Specifically, Tyco knew about PFAS toxicity and environmental risks when it started to produce PFAS-containing AFFF in or before the *1970s*. Compl. ¶ 132 (Tyco's initiation of AFFF manufacturing); *id.* ¶¶ 141–51, 161–66 (state of industry knowledge in and before the 1970s); *id.* ¶¶ 185–89, 193 (Tyco's awareness of industry knowledge). By *1979*, Tyco knew about the

---

[5] Tyco writes, "In addition, other facilities within the Delaware River watershed upstream of the City have used and released MilSpec AFFF, including MilSpec AFFF manufactured by Tyco." NOR ¶ 20. Tyco does not identify these "other facilities," let alone show that it entered a contract with the federal government related to these facilities.

[6] The Second, Fifth, Seventh, Eighth, and Ninth Circuits agree. *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990) ("any dangers"); *Skyline Air Serv., Inc. v. G.L. Capps Co.*, 916 F.2d 977, 980 (5th Cir. 1990) ("any dangers"); *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) ("*no* dangers in the use of the equipment that were known to the supplier but not to the United States"); *Graves v. 3M Co.*, 17 F.4th 764, 772 (8th Cir. 2021) ("any hazards"); *Leite v. Crane Co.*, 749 F.3d 1117, 1123 (9th Cir. 2014) ("any asbestos hazards").

potential carcinogenicity of PFAS. Compl. ¶ 149 (state of industry knowledge); *id.* ¶¶ 185–89, 193 (Tyco's awareness of industry knowledge).

Tyco's allegations in its Notice of Removal reinforce the City's allegations about Tyco's superior knowledge. For example, Tyco alleges that the United States did not learn about the environmental risks of PFAS-containing AFFF until *1980*, and about the toxicity of PFAS-containing AFFF until *2001*. NOR ¶ 32 ("[A]s early as October 1980, a report [by the military] stated that AFFF . . . 'constituents . . . are considered to have adverse effects environmentally.'"); *id.* ("By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be 'toxic' and 'persistent.'"). According to Tyco, it was not until *2002* that the United States "issued a draft hazard assessment" that described "alleged associations between [one type of PFAS] and cancer." *Id*. If anything, Tyco's allegations only confirm that the United States' knowledge of AFFF dangers lagged far behind Tyco's knowledge.

Because Tyco cannot show that it discharged a government contractor's warning duty, Tyco tries to minimize that duty. Tyco argues that it may benefit from the government-contractor defense if the United States was "*sufficiently* informed regarding alleged product-related dangers to exercise its discretionary authority in specifying and procuring MilSpec AFFF." *See* NOR ¶ 32 (emphasis added). That is not the law. The question is not whether the United States was *sufficiently* informed. It is whether Tyco warned the United States of *any* hazards known to Tyco but not the United States. *See supra* n.6 and accompanying text. The *Boyle* Court imposed this broad duty to disincentivize government contractors like Tyco from "perversely impeding [federal officers] by cutting off information highly relevant to the [United States'] discretionary decision[s]" in the contracting context. 487 U.S. at 513. The Court worried that "in [the] absence" of an expansive duty to warn, "the displacement of state tort law [by the government-contractor defense] would create some incentive for the manufacturer to withhold knowledge of risks." *Id.* at 512–13.

*Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir. 1989), forcefully explains why the Court should reject Tyco's watered-down "sufficiently informed" standard. The Fifth Circuit disapproved of the notion that a contractor "might argue one day"—long after having failed to warn the United States—"that it should have the benefit of the defense despite its failure to give a warning . . . because the information withheld would have been of no use to the government and was not desired by the government," or "because the provision of the information would not have

affected the government's 'approval' of the [product's] design." *Id.* at 1481. Similarly, here, Tyco argues that the government did not require any warning because "Naval Sea Systems Command 'made a discretionary determination,'" NOR ¶ 33, and was "sufficiently informed" about it, *id.* ¶ 32. Because "sufficiently informed" is not the standard and because Tyco cannot demonstrate it provided any warnings at all to the United States, accepting Tyco's argument would improperly condone its failure to warn the United States.

*       *       *       *

Nothing in the record shows that Tyco ever contracted with the United States. Even assuming Tyco contracted with the United States to supply AFFF, Tyco does not show that any contract is relevant to the City's claims. And even assuming Tyco was a government contractor in a manner relevant to the City's claims, Tyco does not show that it discharged its broad duty as a contractor to warn the United States about its products' risks. Tyco fails to show a colorable government-contractor defense, and this action should be remanded.

**B.      Tyco further fails to show that it "acted under" a federal superior.**

Tyco also fails other elements of the federal-officer removal jurisdictional test—a test that requires all elements be satisfied. Under the third element, Tyco theorizes that it "acted under" a federal superior whenever it supplied PFAS-containing AFFF to Part 139 commercial airports, even if it never contracted with the United States. NOR ¶¶ 22–24. This theory of "acting under" clashes with controlling precedent, which requires a more direct relationship between a private defendant like Tyco and the United States.

Tyco's Notice of Removal describes the *military*'s procurement activities for MilSpec AFFF. *Id.* ¶ 17–18. But these procurement activities are irrelevant to the City's claims. For the City's case, Tyco's alleged connection with the United States is as follows: The FAA required Part 139 airport operators to maintain sufficient firefighting capability at airports. Specifically, the FAA required airport operators to use MilSpec AFFF, thus adopting an AFFF specification that was developed in the military procurement context. Tyco supplied MilSpec AFFF to Part 139 airport operators so that those *operators* could comply with FAA requirements. In other words, Tyco sold MilSpec AFFF on the open market to help commercial airport operators fulfill *their* obligations under Part 139.

Here, Tyco's relationship with the United States is even more attenuated than the one the Supreme Court found insufficient in *Watson v. Phillip Morris Cos.*, 551 U.S. 142 (2007); the

10

leading decision on the "acting under" element. The *Watson* Court stressed that "'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152. As relevant here:

> A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so *even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored*.

*Id.* at 153 (emphasis added).

Here, Tyco is one step removed from the regulatory oversight described in *Watson*. Part 139 imposes no requirements on AFFF manufacturers like Tyco. Instead, Part 139 charges commercial airport operators with assuring sufficient firefighting capability and using AFFF. Companies like Tyco are neither selling AFFF to the United States nor being charged with complying with any particular federal regulations.

Also consider *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022). The Third Circuit rejected arguments by oil and gas companies that they were federal officers because they were regulated under federal leasing programs. *Id.* at 713. The Third Circuit observed the "leases [did not] impose close federal control," and the "oil produced under [the leases] is produced to sell on the open market, not specifically for the government." *Id.* Like the oil companies in *Hoboken*, Tyco merely sold goods on the "open market, not specifically for the government." *Id.* And, unlike the oil companies in *Hoboken*, Tyco was not subject to the FAA's Part 139 regulations.

Even if this court finds that the FAA's imposition of a MilSpec AFFF requirement on airport operators is akin to imposing such a requirement on Tyco, that would still be insufficient to support "acting under" status for Tyco. *Maglioli v. Alliance HC Holdings, LLC*, 16 F.4th 393 (3d Cir. 2021), is instructive. There, the Third Circuit rejected nursing home operators' arguments that they were federal officers because they were "subject to intense regulation" and because the United States considered nursing homes "essential critical infrastructure." *Id.* at 405–06. The court adhered to *Watson*'s rule that "intense regulation . . . alone does not mean [a defendant was] 'acting under' federal officers." *Id.* at 405. Among other factors, the Third Circuit stressed that the nursing home operators were not "government contractors," they lacked a "close relationship with the federal government," and they were "not delegated federal authority." *Id.* So, too, for Tyco.

After all, even extremely intensive federal oversight does not turn a private corporation into a federal officer. The Seventh Circuit's decision in *Lu Junhong v. Boeing Co.*, 792 F.3d 805

(7th Cir. 2015), provides a stark example. There, the FAA subjected Boeing to numerous requirements to demonstrate that its commercial aircraft were airworthy. *Id.* at 808–09. The FAA inspected many aspects of aircraft design for compliance and also expected Boeing to self-inspect and "self-certif[y]" its compliance for other aspects of aircraft design. *Id.* at 808–09. The FAA and Boeing became so entangled that the FAA arguably "conscripted" Boeing's "staff to perform [regulatory] functions." *Id.* at 809–10. Yet, even under this close relationship, the Seventh Circuit found Boeing's regulatory compliance did not support "acting-under" status. *Id.*

Tyco counters that because AFFF is "a mission-critical . . . aviation safety product," its production and sales of AFFF must be actions taken under a federal officer. NOR ¶ 23. But the Third Circuit and other courts routinely deny acting-under status to federally regulated entities that provide critically important products and services. In *Maglioli*, the Third Circuit rejected arguments that nursing home operators were federal officers because their services constituted "critical infrastructure." 16 F.4th at 405–06. In *Hoboken*, the Third Circuit rejected acting-under status for federally regulated oil and gas companies. 45 F.4th at 713. In *Lu Junhong*, the Seventh Circuit rejected acting-under status for Boeing's commercial aircraft activities. 792 F.3d at 808–10. These decisions underscore that even if MilSpec AFFF is necessary and federally required for civil aviation, producing it and selling it to airport operators does not make Tyco a federal officer.

Relatedly, Tyco misquotes the Second Circuit's decision in *Isaacson v. Dow Chemical Co.*, 517 F.3d 129 (2d Cir. 2008), when the company argues that AFFF manufacturers necessarily qualify for federal-officer removal because they provided "vital products 'that, in the absence of Defendants, the Government would have had to produce itself.'" NOR ¶ 24 (quoting *Isaacson*, 517 F.3d at 137). *Isaacson*'s language refers specifically to federal contractors: the Second Circuit addressed the United States' production of goods for "itself" in the context of chemical companies that had contracted with the United States to produce Agent Orange for wartime applications. *Id.* at 133. The *Isaacson* court held that because the chemical companies had supplied goods to the United States under "close [federal] supervision," their conduct served important federal functions and went beyond mere regulatory compliance. *Id.* at 137.[7] Accepting Tyco's misquotation of

---

[7] Similarly, the *Watson* Court noted that "when the relationship between *the contractor* and the Government is an unusually close one," they "at least arguably . . . perform[] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." 551 U.S. at 153–54 (emphasis added).

*Isaacson* would have absurd implications. There are countless federally regulated goods and services that are essential for society such as food, pharmaceuticals, and banking services. Under Tyco's misreading of *Isaacson*, any manufacturer of an essential, federally regulated good or service could satisfy the "acting under" requirement by alleging that in the absence of private providers, the United States would have to provide that good or service. That would unduly expand federal-officer removal.

Finally, Tyco introduces a red-herring concern: that subjecting it and other AFFF manufacturers to state tort law would conflict with federal AFFF specifications. NOR ¶ 26. If Tyco believes Pennsylvania law would impose duties of care inconsistent with federal specifications, it may raise a substantive preemption defense to the City's claims. It is black-letter law that such a defense "does not . . . confer federal question jurisdiction." *Lazorko v. Penn. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000). Tyco may alternatively argue that the state-law standard of care should be informed by the federal specifications. That argument, of course, also would not support federal jurisdiction.

In sum, Tyco's sales of AFFF to Part 139 commercial airport operators for their own use in complying with federal regulation does not support "acting under" status, even if Tyco could show that it sold AFFF to a Part 139 airport relevant to the City's claims, which it has not done.

### C.    Tyco does not show a connection between its federal-officer conduct and the City's suit.

Under the third element of the federal-officer removal statute, Tyco must show that the City's suit is one "*for or relating to* any act under color of [federal] office." *In re Commonwealth's Motion*, 790 F.3d at 471 (quoting 28 U.S.C. § 1442(a)(1)). Put differently, "there [must] be a 'connection' or 'association' between" "the acts for which [Tyco] [is] being sued" and "the federal office." *Id.* (quotations omitted). Because Tyco never "acted under" a federal officer as discussed in Section B above, it axiomatically cannot show any connection between the City's suit and a federal office.

### D.    Tyco's non-precedential decisions are either easily distinguishable or incorrectly decided.

Instead of justifying removal under the controlling precedents that bind the Court, Tyco latches onto five out-of-circuit district court decisions: *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018), *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021

WL 744683 (W.D. Mich. Jan. 6, 2021), and three orders by the District of South Carolina in the *AFFF MDL* denying motions to remand, which Tyco refers to as "MDL Order 1,"[8] "MDL Order 2,"[9] and "MDL Order 3."[10] Tyco is wrong to rely on these decisions.

*Ayo*, *Nessel*, MDL Order 1, and MDL Order 2 are distinguishable because there, the plaintiff expressly alleged or represented that the defendants invoking federal-officer removal had sold AFFF to the military. In other words, there was no dispute that defendants had contracted directly with the United States to sell AFFF--relevant to those plaintiffs' claims--and the plaintiff's complaint in those cases included claims that encompassed those sales. In *Ayo*, the plaintiff alleged that the defendants "regularly contract with . . . the DOD, the [U.S. Air Force], specific installations, and/or third-party logistic intermediaries, to sell and deliver AFFF to bases throughout the country, including to [a New York Air National Guard base at issue in the complaint]." 2018 WL 4781145, at *9 (quoting the operative complaint). In MDL Order 1, the plaintiff "allege[d] that Tyco manufactured and sold AFFF products . . . to the U.S. military, which used and stored the products at certain sites." MDL Order 1 at 4. In MDL Order 2, the plaintiff represented that the removing defendants had "sold a portion of the AFFF products" at issue in the action "to the U.S. military." MDL Order 2 at 4.

The courts' orders in *Nessel* and MDL Order 3 are inconsistent with U.S. Supreme Court and Third Circuit precedents holding that mere compliance with regulations or specifications does not mean that a private party was acting under a federal officer. In *Nessel*, the Western District of Michigan made the same misstep Tyco commits here: the court conclusorily assumed that because Tyco made Mil-Spec AFFF, it acted under a federal officer. 2021 WL 744683, at *3. Similarly, in MDL Order 3, the District of South Carolina stated that "[d]esigning AFFF products to military specifications promulgated by the Department of Defense . . . may constitute 'acting under.'" MDL Order 3 at 4. As discussed in Section B above, that analysis clashes with *Watson*'s rule that "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself" satisfy the "acting-under" requirement. 551 U.S. at 152.

---

[8] *AFFF MDL*, Order (D.S.C. ECF No. 103).

[9] *AFFF MDL*, Order (D.S.C. ECF No. 320).

[10] *AFFF MDL*, Order (D.S.C. ECF No. 325).

Helpfully, this Court need not rely on *Nessel* or MDL Order 3 but instead is bound by U.S. Supreme Court and Third Circuit precedent, which clearly addresses the standard to be applied to Tyco's removal.

## V.      Conclusion

Tyco fails to establish removal jurisdiction under the federal-officer removal statute. This Court should remand this state-law action brought by a state subdivision to state court.

Dated: December 29, 2022                 Respectfully submitted,

                                         */s/ Stephanie D. Biehl*
                                         Stephanie D. Biehl
                                         **SHER EDLING LLP**

                                         Diana Cortes
                                         diana.cortes@phila.gov
                                         **PHILADELPHIA CITY SOLICITOR**
                                         1515 Arch St.
                                         Philadelphia, PA 19102
                                         (215) 683-5003

                                         Renee Garcia (Bar No. 315622)
                                         renee.garcia@phila.gov
                                         Sean J. McGrath (Bar No. 322895)
                                         sean.mcgrath@phila.gov
                                         Benjamin H. Field (Bar No. 204569)
                                         benjamin.field@phila.gov
                                         **CITY OF PHILADELPHIA LAW
                                         DEPARTMENT**
                                         Affirmative & Special Litigation Unit
                                         1515 Arch St.
                                         Philadelphia, PA 19102
                                         (215) 683-5444

                                         VICTOR M. SHER (*pro hac vice forthcoming*)
                                         vic@sheredling.com
                                         MATTHEW K. EDLING (*pro hac vice forthcoming*)
                                         matt@sheredling.com
                                         STEPHANIE D. BIEHL (*pro hac vice*)
                                         stephanie@sheredling.com
                                         PAUL STEPHAN (*pro hac vice*)

paul@sheredling.com
YUMEHIKO HOSHIJIMA (*pro hac vice
forthcoming*) yumehiko@sheredling.com
GRETEL LEE (*pro hac vice forthcoming*)
gretel@sheredling.com

**SHER EDLING LLP**
100 Montgomery St. Suite 1410
San Francisco, CA 94104
(628) 231-2500

*Attorneys for Plaintiff City of Philadelphia*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 29th of December, 2022, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

/s/ Stephanie D. Biehl
Stephanie D. Biehl